UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT C.,

             Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

Case No.  25-cv-05165-SI

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 11, 13

Plaintiff Robert C. moves for summary judgment to reverse the final administrative decision of the Commissioner of Social Security, who found that plaintiff was not disabled under Title II of the Social Security Act. Dkt. No. 11-1 ("Pl.'s Mot."). Defendant cross-moves to affirm the decision. Dkt. No. 13 ("Def.'s Mot."). Having considered the briefs and the administrative record, and for the reasons set forth below, the Court GRANTS plaintiff's motion for summary judgment, DENIES defendant's cross-motion for summary judgment, and REMANDS this action for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

On August 13, 2021, plaintiff filed an application for Social Security Disability Insurance benefits ("SSDI") under Title II of the Social Security Act. Dkt. No. 8-1, Admin. Record ("AR") 17. Plaintiff alleged disability beginning July 1, 2016, later amended to February 27, 2019.[1] *Id.* at

_____

[1] Plaintiff's brief states that he alleges his disability began September 1, 2017, Pl.'s Mot. at 4, but the record contains a letter to the ALJ from counsel (the same counsel who currently represents plaintiff) amending the onset date to February 27, 2019. *See* AR 354.

38, 59, 354. His date last insured was December 31, 2023. *Id.* at 17, 59. He was forty-nine years old on his date last insured. *Id.* at 27, 354.

Plaintiff filed for disability benefits on the basis of chronic back pain, sciatica, migraines, chronic obstructive pulmonary disease ("COPD"), and depression. *Id.* at 60. In 2006, plaintiff underwent back surgery due to an injury sustained while lifting heavy machinery in a work-related accident. *Id.* at 67-68. The surgery helped, but the back pain continued and worsened over the years. *Id.* at 68. Plaintiff worked as a residential and commercial painter until 2016, when he stopped working due to his medical conditions. *Id.* at 287-288.

Plaintiff's benefits application was denied initially and upon reconsideration. *Id.* at 17. Plaintiff then filed a written request for a hearing, which took place by telephone on March 27, 2024. *Id.* Plaintiff was represented by counsel at the hearing. *Id.* Plaintiff testified, as did vocational expert Thomas Linvill. *Id.* On May 15, 2024, Administrative Law Judge ("ALJ") Tova Wolking issued an unfavorable decision, finding plaintiff was not disabled within the meaning of the Social Security Act at any time between February 27, 2019, to December 31, 2023. *Id.* at 28. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *Id.* at 1. Plaintiff then filed this action for judicial review under 42 U.S.C. § 405(g). Dkt. No. 1.

**LEGAL STANDARDS**

**I.    Standard of Review**

The Social Security Act authorizes an Article III court to review final decisions of the Commissioner. 42 U.S.C. § 405(g). This Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. *Id.* Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001). The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole. *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less

United States District Court
Northern District of California

than a preponderance." *Id.* at 1098. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## II.    Finding of Disability

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[,]" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(A)-(B). The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of proof for steps one through four and the Commissioner has the burden of proof for step five. *Tackett*, 180 F.3d at 1098.

The five steps of the inquiry are:

Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. *Tackett*, 180 F.3d at 1098 n.3.

In between the third and fourth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), (e), 416.945(a)(5)(i). To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work. *Id.* §§ 404.1545(a)(4), 416.945(e). The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record. *Id.* The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability. *Id.* In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms. *Id.* When evaluating intensity and persistence, the ALJ must consider all the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her. *Id.* The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements. *Id.* §§ 404.1529(c)(2), 416.929(c)(2). The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vii). After determining the RFC, the ALJ proceeds to steps four and five of the disability inquiry.

**ALJ HEARING**

Plaintiff testified at the hearing about his health conditions, which he believed prevented him

from working.  AR 33-58.  He testified that his "pain has significantly gotten worse through the years[,]" causing him to "not [be] able to do a full day of work [] without pain." *Id.* at 39.  He stated that he had received epidural steroid injections "maybe four to five years" before and would have received more injections but could not because insurance would not cover it.  *Id.* at 40.  Plaintiff testified that "somedays I wake up and I'm just in such pain, I can't even get out of bed." *Id.* at 41. He claimed that he experiences "very, very shooting pains" "just walking to and from . . . the bathroom" and has experiences where "I'll be walking and I'll just get a shock of pain and I will just drop." *Id.*  He testified that these incidents are "happening more frequently now . . . ." *Id.*  In response to plaintiff's counsel's job hypothetical that would require periodic sitting and standing, plaintiff responded that his ability to perform those requirements would "depend[] on my pain level . . . .  I can just drop at any time due to the pain." *Id.* at 42.

Plaintiff testified that he takes pain medication but he "never get[s] full relief from [his] pain" and the medication "make[s him] very drowsy and not so coherent." *Id.* at 42-43.  Plaintiff reported that he takes Flexeril and Naproxen every day and uses two inhalers for his COPD.  *Id.* at 49.  Because of the drowsiness, plaintiff testified that he needs to "sleep for at least a couple of hours maybe at minimum" "on a daily basis." *Id.* at 43-44.

As to whether he could complete daily activities independently, plaintiff responded that it depends on his pain level that day.  *Id.* at 48.  If he wakes up in pain, then "[he] might need some help from [his] girlfriend to the shower." *Id.*  On a decent day he tries to do household chores such as washing dishes or vacuuming, but sometimes the pain level prevents him from getting out of bed. *Id.* at 44-45.  "I get to the point where I may feel like I'm overexerting myself so what I'll typically [do] is I'll come back to the bedroom, lay down in bed because that gives me a lot of relief to lay down because it takes the weight off of my [] back." *Id.* at 44.  Vacuuming also triggers his COPD, causing shortness of breath and requiring him to use his inhaler or lie down. *Id.* at 45.  Plaintiff testified that he only drives "if [he] absolutely [has] to" and to places that are close by. *Id.*  He stated that he lives with his girlfriend of 12 years. *Id.* at 47-48.

Plaintiff indicated that not being able to work has "put [him] in a depression state[.]" *Id.* at 47.  He does not take and has not received medication for his depression but at the time of the

United States District Court
Northern District of California

hearing was seeing a behavioral health counselor. *Id.* at 46-47.

When the ALJ asked about his past hobbies, plaintiff testified he "can't do any hobbies" and "it's just very difficult to focus on little things like that . . . with my pain[.]" *Id.* at 49. Plaintiff testified that he stopped talking on the phone and playing video games in 2022 due to his symptoms. *Id.* at 50. Plaintiff said he quit smoking one and a half to two years before the hearing and that his COPD symptoms have not improved since. *Id.* at 50-51.

**ALJ DECISION**

On May 15, 2024, the ALJ issued a decision finding plaintiff not disabled under the Social Security Act. AR 28. The ALJ applied the five-step analysis in accordance with 20 C.F.R. § 416.920. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of February 27, 2019, through his date last insured of December 31, 2023. *Id.* at 19. At step two, the ALJ found plaintiff suffered severe impairment from lumbar degenerative disc disease. *Id.* at 20. However, the ALJ declined to find plaintiff's alleged fatty liver, emphysema, migraines, or depression impairments were severe. *Id.* at 20-21. At step three, the ALJ found plaintiff's physical impairment did not meet or medically equal the criteria of one of the Listing of Impairments, specifically Sections 1.15 and 1.16. *Id.* at 22.

The ALJ then determined plaintiff's RFC and found plaintiff able "to perform light work as defined in 20 CFR 404.1567(b) except he can stand and/or walk up to four hours in an eight-hour workday and sit up to four hours in an eight-hour workday. He can occasionally climb, balance, stoop, kneel, crouch and crawl. He cannot be exposed to temperature extremes or respiratory irritants."[2] *Id.* at 22-23.

At step four, the ALJ found plaintiff unable to perform past work through the date last

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

United States District Court
Northern District of California

insured. *Id.* at 27. At step five, after considering plaintiff's age, education, work experience, and RFC through the date last insured, and the testimony of the vocational expert, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including small products assembler, routing clerk, and marker/pricer. *Id.* at 28. Accordingly, the ALJ concluded plaintiff was not disabled under the Social Security Act. *Id.*

## DISCUSSION

Plaintiff moves for summary judgment, contending that the ALJ erred (1) in evaluating plaintiff's symptom testimony, and (2) at the step-five finding. Pl.'s Mot. at 6-15. The Commissioner cross-moves for summary judgment, asserting that the ALJ reasonably discounted plaintiff's testimony because it conflicted with medical records and with plaintiff's daily activities and that the vocational expert's testimony amounted to substantial evidence supporting the ALJ's step-five decision. *See* Def.'s Mot.

### I.    Plaintiff's Symptom Testimony

The Court agrees with plaintiff that the ALJ erred by improperly rejecting plaintiff's statements regarding the severity of his symptoms, the side effects of his medication, and the impact of his symptoms on his activities of daily living.

#### A.    Legal Standard

The Ninth Circuit follows a two-step test for deciding what weight to give to a plaintiff's symptom testimony. At step one, the ALJ must ascertain whether the plaintiff has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). If the plaintiff satisfies step one, and there is no evidence of malingering, then at step two, the ALJ can reject the plaintiff's testimony about the severity of his symptoms only by providing specific, clear, and convincing reasons for doing so. *Id.* If the ALJ finds that the plaintiff's testimony regarding the severity of his

symptoms is not credible, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). This clear and convincing standard is the most demanding standard required in Social Security cases. *Trevizo*, 871 F.3d at 678.

### B.    ALJ's Findings

At step one of the symptom testimony inquiry, the ALJ found that plaintiff's medically "determinable impairments could reasonably be expected to cause the alleged symptoms." AR 23. The ALJ cited no evidence of malingering. At step two, the ALJ concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent" with the evidence in the record. *Id.*

The ALJ stated various reasons for discrediting plaintiff's testimony about the severity of his symptoms and limitations. These include: (1) the reports in the record indicate that plaintiff "was neurologically intact" and had a normal gait; (2) "no doctor has indicated that he is a candidate for surgery"; (3) "he has been noted to be in no acute or apparent distress"; (4) "[h]e has been noted to be noncompliant with medication"; and (5) "his daily activities do not support claims of excess limitation." *Id.* at 25.

### C.    Analysis

As a threshold matter, the Court finds that the ALJ's rejection of plaintiff's symptom testimony was not sufficiently specific under the applicable legal standard. "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *see also Smolen*, 80 F.3d at 1284. In *Brown-Hunter*, for instance, the Ninth Circuit found that an ALJ erred by making a conclusory statement for rejecting the claimant's testimony while "fail[ing] to identify specifically which of Brown-Hunter's

statements she found not credible and why."[3]  806 F.3d at 493.  Likewise here, over the course of several pages, the ALJ summarized plaintiff's hearing testimony, plaintiff's function reports, and some of the medical records (while omitting others, as discussed further below).  *See* AR 23-26.  It is unclear from the ALJ's decision precisely which parts of plaintiff's testimony the ALJ rejected and specifically what evidence in the record the ALJ found conflicted with that testimony.  It is against this backdrop that the Court analyzes the reasons the ALJ provided for finding plaintiff's testimony unpersuasive overall.

First, in rejecting plaintiff's testimony, the ALJ relied on several neurological medical reports, mostly from 2019, in which the results indicate that plaintiff frequently exhibited 5/5 strength, normal muscle bulk and tone, negative straight leg raising and normal gait.  *Id.* at 24-25. Evaluating the medical opinions, the ALJ concluded that the medical opinions supported the RFC determination that plaintiff could perform light work with additional limitations.  *Id.* at 26-27. However, the ALJ failed to make a connection between the examination results and any purported inconsistency with plaintiff's reported pain.  Additionally, the ALJ discounted—without reason— evidence from the record that would support plaintiff's testimony that his back condition is worsening.  For instance, the ALJ noted that plaintiff had an "antalgic" gait in November 2022 but then cited back to earlier treatment notes (from 2019 and early 2020) to show that plaintiff had a "normal" gait on other occasions.[4]  *See id.* at 25.  The ALJ also failed to note that at the February 2022 consultative examination with Dr. Rose Lewis, M.D., plaintiff reported that "he can only walk one or two blocks before he has to stop."  *Id.* at 657.  This is consistent with what he reported in his function report completed that same month.  *See id.* at 301.  Dr. Lewis's examination further noted that plaintiff "cannot do tandem or toe-heel walking complaining of low back pain and he could not balance himself."  *Id.* at 658.  Substantial evidence therefore does not support the ALJ's finding that

---

[3] Although "SSR 16-3p eliminated the use of the term 'credibility,' [Ninth Circuit] case law using that term is still instructive in the Court's analysis."  *Christine G. v. Saul*, 402 F. Supp. 3d 913, 920 n.7 (C.D. Cal. 2019) (citing *Trevizo*, 871 F.3d at 678 n.5).

[4] The ALJ also misstated one of the treatment notes, from January 2019, which did not state that plaintiff had a "normal" gait but instead stated that plaintiff "occasionally" had unsteadiness of gait.  *See* AR 25 (citing Ex. B-4F at 25), 486-487.

United States District Court
Northern District of California

plaintiff had a normal gait. Rather, the evidence indicates plaintiff's gait was worsening and was no longer "normal" by early 2022.

Second, the ALJ's decision repeatedly pointed to the lack of a medical recommendation for surgery. *See id.* at 23, 25. The Court finds this is not a clear and convincing reason to reject plaintiff's symptom testimony on the present record. A June 2019 treatment note indicates that plaintiff had back surgery in 2006, that the "surgery helped, but [he] still had persistent pain that gradually worsened over the past 6 years." *Id.* at 365. At the March 2024 hearing, plaintiff indicated that it was unclear whether he would need surgery again but that he had an upcoming MRI and that surgery might still be a possibility. *Id.* at 46. The ALJ decided not to keep the record open to receive that new information, given that plaintiff's date last insured ended December 31, 2023. *Id.* at 37. In other words, plaintiff had already undergone one surgery, and the possibility of future surgery had not been ruled out.

Third, the ALJ pointed to several medical reports in the record where plaintiff "has been noted to be in no acute or apparent distress." *Id.* at 25. Plaintiff contends that his lumbar degenerative disc disease is chronic and that a lack of acute or apparent distress during a given doctor's visit is not a basis for rejecting his symptom testimony. Pl.'s Mot. at 7. The ALJ's finding relies on several pain management clinic treatment notes in the record in which providers report plaintiff's "[c]onstitution" to be "alert," "cooperative," pleasant," "well-nourished," "groomed," "does not demonstrate notable pain," and in "no acute distress." *See* AR 24-25, 366, 377, 469, 711. But the reports also note, and the ALJ ignored, musculoskeletal examinations showing low back pain and plaintiff's subjective reports of numbness and sharp pain that radiates down his leg. *See, e.g., id.* at 376, 397, 474, 605, 707.

The presence of acute or apparent distress in medical reports is not particularly informative here. At most the medical reports indicate that plaintiff's pain was not visibly apparent to the examining medical professional. Plaintiff reported drastic fluctuations in his pain, testifying that some days his back pain is so severe that he "can't even get out of bed" and that he has "had [his] back go[] out just from brushing [his] teeth or a wrong movement." *Id.* at 41-42, 44. Plaintiff testified that in an average day he frequently lies down in bed to relieve his back pain. *Id.* at 44.

United States District Court
Northern District of California

The ALJ relied heavily on select medical notes indicating "no acute distress" but did not explain why this evidence was inconsistent with plaintiff's reported chronic back pain or with plaintiff's testimony that his pain fluctuates from day to day. The Court finds that these reports of no acute or apparent distress are not clear and convincing reasons to discount plaintiff's symptom testimony.

Fourth, the ALJ cited plaintiff's purported noncompliance with his gabapentin prescription. The Court finds this, too, was not clear and convincing based on the present record. The record indicates plaintiff was prescribed gabapentin several times between 2017 and 2022. *Id.* at 499, 519, 544, 644, 686. In rejecting plaintiff's symptom testimony, the ALJ cited a 2019 Stanford Pain Management Clinic medical note in which the physician explained that plaintiff had reported "feeling >50% maybe almost 80% better" after taking the drug gabapentin. *Id.* at 472. But at the visit plaintiff admitted he "became 'sloppy' about taking his gabapentin and he is no longer taking gabapentin[,]" causing his pain to increase. *Id.* The report further noted that plaintiff "did not feel good" taking the gabapentin but that he was willing to try it again. *Id.* at 472-473. He received a new prescription for the gabapentin at that visit, and the ALJ cited no other medication noncompliance in the record. *See id.* at 24, 472. The ALJ did not ask plaintiff any questions at the hearing about the circumstances surrounding his period of noncompliance with gabapentin.

Before denying benefits because of a failure to follow treatment, the ALJ must conduct an inquiry into the circumstances of the non-compliance and whether the treatment prescribed can restore the plaintiff's ability to work. *See Byrnes v. Shalala*, 60 F.3d 639, 641 (9th Cir. 1995). The ALJ must "consider[ ] possible reasons [plaintiff] may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." SSR 16-3p, *available at* 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017).[5] Moreover, the ALJ has a "duty to fully and fairly

---

[5] Social Security Rulings "do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009). They "'reflect the official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.'" *Id.* (quoting *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006)).

develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). The Court finds that in failing to conduct this inquiry, the ALJ did not fully develop the record concerning the length of and reasons for plaintiff stopping the gabapentin. In the absence of such information, plaintiff's noncompliance with the gabapentin is not a clear and convincing reason to reject the symptom testimony. Further, the record shows that plaintiff takes alternative medications that provided him some relief, including Flexeril and Naproxen. AR 365, 376, 713, 731. Despite plaintiff's testimony that these daily medications cause him to feel drowsy and incoherent, the record does not indicate that plaintiff was noncompliant with these other medications. *Id.* at 43.

Lastly, the ALJ rejected plaintiff's testimony as purportedly inconsistent with evidence that plaintiff performs many daily activities independently. *Id.* at 25. Plaintiff argues that the ALJ selectively cited plaintiff's ability to perform daily activities but rejected his testimony about limitations on how and when he performs those activities. Pl.'s Mot. at 8-9. Plaintiff contends that the ALJ's omissions led her to incorrectly conclude that plaintiff could perform "'light work' eight hours a day/five days a week or the equivalent." *Id.* at 9. The Court agrees with plaintiff and further notes that the ALJ misstated portions of plaintiff's reports about his daily functioning.

The ALJ's summary of plaintiff's daily activities is taken almost verbatim from a July 2022 psychological evaluation. *See* AR 25, 663-664. This account conflicts with plaintiff's March 2024 hearing testimony and other evidence. For instance, the ALJ decision states that plaintiff "is independent for basic activities of daily living" and is "able to shower and dress [him]self independently." *Id.* at 25. However, plaintiff testified that some days he requires help from his girlfriend to shower and in his 2022 Function Report he stated that his ability to dress and bathe had been impacted by his conditions and that he gets help from family members to prepare food. *Id.* at 48, 298. The ALJ also stated that plaintiff "is able to drive a vehicle and he was able to drive himself to the [2022] consultative examination," whereas the plaintiff testified in March 2024 that he cannot drive and drives "only if I absolutely have to[.]" *Id.* at 25, 42, 45; *see also id.* at 300 (February 2022 Function Report, stating plaintiff sometimes required help if he needed to drive somewhere). The ALJ decision asserted that plaintiff "is able to live alone[,]" citing plaintiff's 2022 Function Report.

*Id.* at 25 (citing Ex. B-6E). However, plaintiff left that question blank. *See id.* at 296. When asked to clarify at the hearing, plaintiff said, "I live with my girlfriend" and "I've been with her for 12 years." *Id.* at 47-48. As a further example, elsewhere in the RFC portion of the decision, the ALJ misstated that plaintiff's daily activities include "playing video games[.]" *See id.* at 23. At the hearing, when the ALJ asked whether plaintiff can continue to "play video games on TV[,]" he responded: "That, that has subsided because of the fact that, you know, it's sitting and standing, yeah. But I haven't done that in a very long time." *Id.* at 50. He said it had been since about 2022 that he could play video games on the TV. *Id.* Thus, the ALJ exaggerated plaintiff's independence and ability to engage in daily activities in a way that is largely inconsistent with plaintiff's testimony and Function Reports.

The Court notes that overall plaintiff testified consistently and in detail at the hearing regarding his difficulty walking and his need to lie down and rest during the day. He testified that his medications make him so drowsy that he needs to go to sleep and lie down "for at least a couple of hours maybe at minimum" "pretty much" on a daily basis. *Id.* at 43-44. In assigning an RFC that called for up to four hours of standing/walking and up to four hours of sitting in an eight-hour workday, the ALJ necessarily rejected plaintiff's testimony regarding how his symptoms impact his daily life, including his need for rest breaks and the side effects of his medications.

For all the above reasons, the Court finds the ALJ's rejection of plaintiff's symptom testimony did not comport with the "demanding" standard required in the Ninth Circuit.

## II.    Step Five

Plaintiff argues that the ALJ erred at step five of the analysis because the hypothetical presented to the Vocational Expert ("VE") was not supported by substantial evidence. Pl.'s Mot. at 11. The Court need not address this argument in detail because the errors the ALJ made in discounting plaintiff's symptom testimony warrant reversal regardless.

However, because the ALJ improperly rejected plaintiff's symptom testimony, the hypothetical questions posed to the VE were likely also unreliable. "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional

United States District Court
Northern District of California

limitations, both physical and mental[,]' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)). "If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value." *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001). Hypothetical questions posed to a vocational expert must include a claimant's subjective impairments unless the ALJ has clear and convincing reasons for discrediting the claimant's testimony. *See Thomas*, 278 F.3d at 959. Thus, to the extent that the ALJ improperly rejected plaintiff's symptom testimony regarding the extent of his pain, the side effects of his medication, and his need to lie down to rest during the day, the Court agrees with plaintiff that those errors would have also impacted the step five analysis.

**III.    Remedy**

Plaintiff asks the Court to remand this case for an immediate award of benefits. Under the credit-as-true doctrine, the Court retains discretion whether to make a direct award of benefits or remand for further proceedings in cases such as this. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)). As stated above, the Court finds the ALJ committed harmful error in improperly rejecting plaintiff's symptom testimony. That error impacted the ALJ's RFC determination which then impacted the hypotheticals presented to the VE. However, the Court declines to remand this case for immediate payment of benefits, finding that "further proceedings in the administrative court would be useful." *See id.* at 1044.

On remand, the ALJ shall reevaluate plaintiff's symptom testimony. If the ALJ rejects plaintiff's testimony, the ALJ may do so only by providing clear and convincing reasons supported by substantial evidence in the record, stating "specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *See Smolen*, 80 F.3d at 1284. The ALJ may hold a rehearing to further develop the record and to elicit additional VE testimony. Accordingly, the Court remands this case for further development of the record as described above and for any other development of the record that would be useful for a new decision.

United States District Court
Northern District of California

# CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED. Defendant's motion for summary judgment is DENIED.  The Court REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

**IT IS SO ORDERED**.

Dated: June 12, 2026

_____

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

15